UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

KELSEY ANNE KRUSE, *individually and on behalf of NJH, ALH, and as Trustee for the Next of Kin of ALH,*

Plaintiffs,

v.

THE CITY OF ELK RIVER, *et al.,*

Defendants.

Civil No. 21-01262(JRT/BRT)

**MEMORANDUM OPINION AND ORDER GRANTING DISTRICT DEFENDANTS' MOTION TO DISMISS**

---

Carrie Anne Loch, **LAW OFFICE OF CARRIE LOCH**, 4048 Lakeland Avenue North, PO Box 22713, Robbinsdale, MN 55422; Richard W. Hechter and Richard L. Morris, **MORRIS LAW GROUP, P.A.,** 7380 France Avenue South, Suite 250, Edina, MN 55435 for plaintiffs;

Joseph E. Flynn and Patrick S. Collins, **JARDINE LOGAN & O'BRIEN PLLP**, 8519 Eagle Point Blvd Ste 100 Lake Elmo, MN 55042 for defendants The City of Elk River, Elk River Police Department, David Williams, Eric Balabon, Joe Gacke, Brandon Martin, Clayton Aswegan, Kevin Heidt, Jon Christie, Brian Boos, Evan Patullo, Tyler Corrier, Adam Bebeau, Chris Morgan, Joe Firkus, Reid Ellanson, Jeanette Nelson, Todd Erickson, Wyatt Studniski, Nic Albert, Thomas Chaffin, Dave Windels, Dale Olmscheid, and Jeff Garcia;

James R Andreen and Samantha R. Alsadi, **ERSTAD & RIEMER, P.A.**, 7301 Ohms Lane, Suite 400, Minneapolis, MN 55439 for defendants Derek Barnett, The County of Sherburne, Sherburne County Health and Human Services, Sherbune County, Minnesota Child Protection Services, Sarah Boonstra, Ashton Minke, Julie Ann Mlsna, and Danette Bird;

Elizabeth J. Vieira and Michael J. Waldspurger, **RUPP, ANDERSON, SQUIRES & WALDSPURGER**, 333 South Seventh Street, Suite 2800, Minneapolis, MN 55402 for defendants Independent School District 728, Independent School District 728 School Board, Lincoln Elementary, Sheila Forney, Samuel Hines, Mary Gartin, Rebecca Dexheimer, John Doe, and Mary Rowe.

In August of 2020, the life of ALH—a minor child—was taken by her father and stepmother. For months, ALH and her brother, NJH, suffered repeated and horrific abuse from Brett and Sarah Hallow. The Hallows' severe abuse caused ALH's death and exacted an unimaginable toll on their family and community.

After ALH's murder, Plaintiff Kelsey Ann Kruse—the children's mother—filed a Complaint against over forty individual defendants. Among the litany of parties to this action are Independent School District No. 728, the District's school board, Lincoln Elementary School (collectively the "District"), District employees Mary Gartin, Sheila Forney, Rebecca Dexheimer, Samuel Hines, and unnamed District employees "John Doe" and "Mary Rowe" (collectively the "Individual District Defendants" and together with the District the "District Defendants").

Kruse asserts the District unconstitutionally deprived her of the care, custody, and control of her children, failed to intervene in the deprivation of her civil rights, and deprived ALH of her right to life and protection of her mother. Kruse also alleges the Individual District Defendants unconstitutionally deprived ALH of her right to life and protection of her mother. In addition to her constitutional claims, Kruse alleges the District Defendants were negligent and are culpable for ALH's wrongful death.

The District Defendants move to dismiss Kruse's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). In response to the District Defendants' motion, Kruse moves to amend her Complaint.[1]

The Court will grant the District Defendants' motion because the Individual District Defendants are entitled to qualified immunity, Kruse has not sufficiently plead that the District violated her constitutional rights via an unconstitutional policy or custom, and Kruse has not pled a legal duty sufficient to maintain her negligence and wrongful death claims. Because the Court will grant the District Defendants' Motion to Dismiss and Kruse's counsel improperly filed a Second Amended Complaint before the Court could consider the original Amended Complaint, the Court will deny Kruse's Motion to Amend as moot.

## BACKGROUND

### I.    FACTUAL BACKGROUND

Kruse is the parent and guardian of NJH and the Trustee for the Next of Kin of ALH. (Compl. ¶¶27-28, May 20, 2021, Docket No. 1.) NJH and ALH were abused by the Hallows' at their Elk River Apartment beginning around 2017. (*Id*. ¶¶71-72.) On August 13, 2020, the Hallows' abuse resulted in ALH's murder via asphyxiation and blunt force

---

[1] Roughly thirty minutes before the scheduled hearing on the District Defendants' Motion to Dismiss, Kruse's counsel filed a Second Amended Complaint unsupported by an accompanying motion or memorandum. (2nd Am. Compl., Apr. 13, 2022, Docket No. 68.)

trauma. (*Id*. ¶¶267-269.) The Hallows were charged with and pled guilty to second-degree murder and were sentenced to 480 months incarceration. (*Id*. ¶270).

Prior to ALH's death, Kruse, the Hallows' neighbors, and various individuals in the community called Elk River Police numerous times about the suspected abuse and neglect of ALH and NJH. (*Id*. ¶¶77, 79.) The County of Sherburne, Sherburne County Health and Human Services, and Sherburne County Child Protection Services were also contacted numerous times with concerns about the children's safety. (*Id*. ¶¶187, 227-237.)

Kruse alleges that the District Defendants were also aware of the children's abuse and that Brett Hallow was depriving Kruse of her custodial rights and preventing her from seeing ALH. (*Id*. ¶ 4.) Specifically, Kruse alleges that Samuel Hines, a licensed school counselor for the District, provided mental health treatment for NJH and received evidence from Kruse demonstrating that NJH may have been experiencing neglect and abuse, but Hines failed to make a report summarizing the maltreatment. (*Id*. ¶¶246-48.) Kruse also contends that Mary Gartin, a school heath aide, observed bruises "all over NJH's body" on one occasion. (*Id*. ¶¶191, 250.) Medical professionals also observed NJH's injuries on the same day as Gartin and decided to report the suspected abuse to Sherburne County. (*Id*. ¶¶186-87.) Elk River Police Officers similarly observed NJH's injuries around the same date. (*Id*. ¶¶172, 190.)

In addition to Hines' and Gartin's firsthand experience, Kruse alleges that on April 21, 2020, she sent Defendant Rebecca Dexheimer an email regarding the suspected abuse of NJH and ALH. (*Id.* ¶252.)[2] In its entirety, Kruse's email states:

> Hi Becky,
>
> I have a personal favor to ask. I'm currently trying to obtain more custody of [NJH] and his sister. Unlike his sister [NJH] has not been to his dads since October 2019. His dad does have 50/50 custody of him and just simply does not ask to have him for his parenting time anymore. He didn't want him on Christmas or Easter and has not attempted to contact him AT ALL and it is not healthy or fair for [NJH] to feel unwanted by his dad.
>
> [ALH] still currently goes there but recently he has not allowed her to come home because of the coronavirus. I have not seen her since January 26th and have been denied all attempts to have any contact with her. This is against our court order which is why I am trying to change custody for her as well.
>
> I'm reaching out to you and their teachers in the hopes that you could create a character witness letter on my behalf. To write a statement

---

[2] Kruse's email was not attached to the Complaint but was provided by the District Defendants. (Decl. of Tim Caskey (Caskey Decl.), Ex. 2, Oct. 06, 2021.) The District Defendants also submitted copies of two maltreatment reports submitted by Hines and a copy of the District's 2020 school calendar. (Caskey Decl. Exs. 1, 3.)

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (quotations omitted). Documents necessarily embraced by the pleadings include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (citing *In re Syntex Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). The court may consider "some materials that are part of the public record or do not contradict the complaint." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Kruse's Complaint implicitly embraces Hines' maltreatment reports by alleging that he failed to make any such reports and explicitly embraces Kruse's email to Dexheimer. The Court may therefore consider the materials without converting the District Defendants' motion to a motion for summary judgment. (Compl. ¶¶ 248, 252.) Similarly, the District's school calendar is a document in the public record and may be considered by the Court.

of your observations of my involvement with [NJH] and [ALH] and their schooling and your observations about my character and behavior that you believe would qualify me to provide care for them. If you can think of a specific incident, that would help.

If you are willing and/or able to help I would really appreciate it! If you cannot, I do understand.

Thank you for your time!

(Caskey Decl. Ex. 2.)

Dexheimer forwarded Kruse's email to Lincoln Elementary School Principal Justin Sperling and asked "[i]s there a district policy against writing something like this?" (Decl. of Elizabeth Vieira ("Vieira Decl."), Ex. 4, Jan. 13, 2022, Docket No. 57.)  Sperling responded and confirmed that "our district has directed staff to not provide that type of information regarding custody issues." (*Id*.)  Dexheimer thus declined to provide the requested character witness letter.  (*Id.*)

Kruse's last factual allegation concerning the District Defendants states that "Sheila Forney reported that on or about June 8, 2020, ALH stopped completing regular schoolwork, attending online class meetings, and completing special research projects" and she "reported that from about June 8, 2020, the Hallows did not respond to Defendant Forney's emails, Seesaw messages, or phone messages regarding ALH." (Compl. ¶¶257-58.)  According to the District's publicly available school calendar, the school year ended on June 4, 2020.  (Caskey Decl., Ex. 3.)

6

## II. PROCEDURAL BACKGROUND

Kruse filed her Complaint on May 20, 2021 alleging five counts against the District Defendants. Counts 1, 4, and 5 allege that the District violated Kruse's and ALH's constitutional rights, Count 5 alleges that the Individual District Defendants violated ALH's constitutional rights, and Counts 6 and 7 allege that the District Defendants negligently failed to investigate the suspected abuse of ALH and NJH and are liable for ALH's wrongful death. (Compl., Counts 1, 4, 5, 6, and 7.)

On October 6, 2021, the District Defendants filed a Motion to Dismiss. (Mot. Dismiss, Oct. 6, 2021, Docket No. 26.)

Kruse and the District Defendants agreed to engage in limited discovery before Kruse was required to reply to the District Defendants' motion. (Stip., at 2, Oct. 27, 2021, Docket No. 35.) Kruse thereafter filed her reply and moved to amend her Complaint. (Pl.'s Mem. Opp. Mot. Dismiss, Dec. 30, 2021, Docket No. 47; Mot. Am., Jan. 3, 2021, Docket No. 52.)

## DISCUSSION

### I. STANDARD OF REVIEW

When reviewing a Rule 12(b)(6) motion, the Court views the complaint in "the light most favorable to the nonmoving party." *Longaker v. Bos. Sci. Corp.*, 872 F.Supp.2d 816, 819 (D. Minn. 2012). The Court considers all facts alleged in the complaint as true to determine whether the complaint states "a claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678, (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility,'" and therefore must be dismissed. *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation" and Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Neitzke v. Williams,* 490 U.S. 319, 326 (1989). Therefore, to survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

 II.     **ANALYSIS**

The District Defendants assert that Kruse's constitutional claims should be dismissed because qualified immunity shields the Individual District Defendants from liability and Kruse has not sufficiently established that the District is liable pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978). The District Defendants also contend that Kruse's tort claims must be dismissed because she has not established a sufficient legal duty to support her claims.

### A. Constitutional Claims

#### a. Qualified immunity

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" and is a question of law for the Court to decide. *White v. Pauly*, 137 S. Ct. 548, 661 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)); *Littrell v. Franklin*, 388 F.3d 578, 584–85 (8th Cir. 2004).

The qualified immunity analysis involves two questions: (1) whether the facts, as alleged by the plaintiff, establish a violation of a constitutional right, and (2) whether the constitutional right was clearly established at the time the defendant allegedly violated the right. *Pearson v. Callahan,* 555 U.S. 223, 232–242 (2009); *Burke v. Sullivan,* 677 F.3d 367, 371 (8th Cir. 2012). Either step of the qualified immunity inquiry may be addressed first. *Pearson,* 555 U.S. at 236.

The clearly established prong of the qualified immunity analysis requires the Court to evaluate whether the constitutional rights at issue are clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful in the situation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("in the light of preexisting law the unlawfulness must be apparent"); *White*, 137 S. Ct. at 551 (noting that

"existing precedent must have placed the statutory or constitutional question beyond debate" in order to conclude that a right has been clearly established). While the clearly established standard is admittedly stringent and the clearly established law must be "particularized to the facts of the case," the Court need not locate a case directly on point in order to conclude that the statutory or constitutional question is beyond debate. *Id*. at 552.

Kruse's counsel appears to argue that the Individual District Defendants' actions violated Kruse's right as a parent to make decisions concerning the care, custody, and control of NJH and ALH. (Pl.'s Mem. Opp. Mot. Dismiss at 19.) However, this argument incorrectly states the relevant constitutional rights pled in the Complaint. Count 5 of Kruse's Complaint is the only count alleging the Individual District Defendants' conduct violated constitutional rights. Specifically, Count 5 alleges that the Individual District Defendants violated ALH's fundamental right to life and to the companionship of her mother. In other words, Count 5 focuses on **ALH's** rights rather than **Kruse's** parental rights.

Disregarding Kruse's counsel's failure to articulate and argue for the pertinent constitutional rights, the Court is not persuaded that the contours of ALH's alleged rights are sufficiently clear such that the alleged unlawfulness of any of the Individual District Defendants' conduct is apparent.

The Complaint alleges that Defendant Gratin observed bruises or other injuries on NJH's body on one occasion and did not make a report. (Compl. ¶¶191,192, 250, 251.) Similarly, Kruse's Complaint alleges that "[o]n numerous occasions throughout 2019 and 2020, Defendant Samuel Hines . . . met with, provided mental health treatment for, and received evidence from N.J.H. and Kelsey Kruse" and that "evidence was provided to Defendant Hines which he knew or should have known demonstrated that N.J.H. was experiencing neglect and physical abuse from Brett and Sarah Hallow." (*Id*. ¶247.) Critically, these factual allegations are relevant to NJH and do not establish that either Gratin or Hines acted unlawfully with regards to ALH's rights. Kruse has not made a sufficiently persuasive argument or pointed to any authority supporting the conclusion that an educational professional who does not file a maltreatment report after observing a child's injuries violates the constitutional rights of that child's sibling when an injury or death later occurs due to maltreatment.

As to Defendant Forney, Kruse alleges that ALH had not been completing homework and that the Hallows had not responded to any of Forney's recent correspondence. (Compl. ¶¶257-58; Caskey Decl., Ex. 3). However, the District's academic calendar shows that the school year ended on June 4, 2020. (Caskey Decl., Ex. 3.) Therefore, on its face, Kruse's Complaint states that ALH stopped completing homework or attending school after the school year ended and that the Hallows thereafter stopped communicating with ALH's teacher. The facts, as alleged by Kruse,

11

do not demonstrate that an educational professional would know that they had somehow violated the constitutional rights of their student.

Lastly, the Complaint alleges that Kruse sent Dexheimer an email on regarding the suspected neglect and abuse of the children and that Dexheimer refused to report the suspected abuse because of the District's policy against involvement in custody disputes. Despite Kruse's characterizations, her conversation with Dexheimer does not describe any abuse that NJH and ALH were suffering. Instead, the email shows that Kruse asked Dexheimer for a character letter to help with her custody dispute over ALH. As with the other Individual District Defendants, Kruse's allegations do not establish the apparent unlawfulness of Dexheimer's conduct.

Kruse's Complaint does not demonstrate that any of the Individual District Defendants alleged conduct violated ALH's clearly established constitutional rights and as a result, the Individual District Defendants are entitled to qualified immunity. The Court will therefore dismiss Count 5 against the Individual District Defendants.

### b. *Monell* Liability

As to the District, Kruse alleges that the District engaged in a pattern or practice of violating her constitutional rights. Pursuant to *Monell*, a school district cannot be held liable solely because one of its employees violates a federally protected right but may be liable under § 1983 if its policies or practices subject a person to a deprivation of rights or causes such a deprivation. *See Connick v. Thompson*, 563 U.S. 51 (2011).

To establish a *Monell* claim, a plaintiff must prove "that his or her constitutional rights were violated by an action pursuant to official municipal policy or misconduct so pervasive among non-policymaking employees of the municipality as to constitute a custom or usage with the force of law." *Ware v. Jackson Cnty.*, Mo., 150 F.3d 873, 880 (8th Cir. 1998) (internal quotation marks omitted). Official policy involves a deliberate choice by an official who has the final authority to establish governmental policy to follow a course of action selected from various alternatives. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Kruse argues, and the District Defendants agree, that the District has a written policy requiring employees to report known or suspected abuse and deprivation of parental rights. However, Kruse does not contend that this policy is unconstitutional, but, rather, that the policy is constitutional and that the District Defendants did not adhere to its requirements.

In the Eighth Circuit, these allegations are insufficient to support the policy prong of a *Monell* claim. It is well established that "failure, if any, of [municipal employees] to follow [municipal] policy cannot be the basis for imposing § 1983 liability." *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997); *Russell v. Hennepin Cnty*, 420 F.3d 841, 848 (8th Cir. 2005) (noting the alleged misconduct "resulted not from the execution of … policy but from the failure to assiduously follow the policy.").

Alternatively, Kruse may support her *Monell* claim by demonstrating a "custom or usage" based upon (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; or (3) that the custom was the moving force behind her alleged constitutional violation. *Jane Doe A. v. Spec. Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 646 (8th Cir. 1990).

However, Kruse's Complaint contains "only boilerplate allegations asserting the mere generic elements of a Monell claim without any factual allegations specific to this case[.]" *D.B. v. Hargett*, No. 13–2781, 2014 WL 1371200, at *6 (D. Minn. Apr. 8, 2014). Kruse merely recites barebones allegations that the District maintained a custom depriving her of her rights "with no facts to indicate what that . . . custom was." *D.B.*, 2014 WL 1371200, at *5–*6.  The allegations do not rise above genericism by alleging specific facts or constitutional violations against her and other students or parent "on multiple occasions, under circumstances similar to those alleged [in the complaint]" and do not otherwise describe how the District's alleged custom was the moving force behind her and her children's alleged constitutional deprivations. *R.S. ex rel. S.S. v. Minnewaska Area Sch. Dist.*, 894 F.Supp.2d 1128, 1137 (D. Minn. 2012).

Because Kruse does not "allege facts which would support the existence of an unconstitutional policy or custom," *Rice v. Rice*, No. 17-796, 2017 WL 4174550, at *6 (D.

Minn. Sept. 19, 2017) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)), the Court will dismiss Counts 1, 4, and 5 against the District.

### B. Tort Claims

In addition to Kruse's constitutional claims, Counts 6 and 7 of her Complaint assert claims for negligence and wrongful death against the District Defendants. In Minnesota, the basic elements necessary to maintain a claim for negligence are (1) duty; (2) breach of that duty; (3) that the breach of duty be the proximate cause of plaintiff's injury; and (4) that plaintiff did in fact suffer injury." *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn. 1982) (quoting *Schmanski v. Church of St. Casimir of Wells*, 67 N.W.2d 644, 646 (Minn. 1954)). And a plaintiff in a wrongful death action must establish the same elements as required to prove a negligence claim but must show "death" instead of an "injury." *Stuedemann v. Nose*, 713 N.W.2d 79, 83 (Minn. App. 2006).

Kruse's counsel argues that the District Defendants owed ALH a duty under Minn. Stat. § 260E.12, subd. 2, which requires local welfare agencies and agencies responsible for maltreatment reports to immediately notify local police or the county sheriff about maltreatment reports. The District Defendants contend that the statute is inapplicable because they are neither law enforcement nor an agency responsible for maltreatment reports. The District Defendants further argue that even considering the relevant duty

under Minn. Stat. § 260E.06—outlining the duty applicable to educational professionals—Kruse cannot maintain her claims for negligence and wrongful death.

Clearly, neither the District nor the Individual District Defendants are a local welfare agency or agency responsible for maltreatment reports and Minn. Stat. § 260E.12, subd. 2 does not provide an appropriate duty sufficient to maintain a tort claim against the District Defendants. Instead, the District Defendants correctly assert that Minn. Stat. § 260E.06, subd. 1 articulates the duty applicable to the District Defendants as educational professionals—the duty to report information to a local welfare agency after knowing or having reason to know that a child has been maltreated.

Notwithstanding the fact that Kruse's counsel has failed to allege the correct duty applicable to the District Defendants, the Court is not persuaded that Minn. Stat. § 260E.06 subd. 1 would support Kruse's causes of action even if it were properly pled. It is well established in Minnesota that a statute does not give rise to a civil cause of action unless the language of the statute is explicit or can be determined by clear implication. *Larson v. Dunn*, 460 N.W.2d 39, 47 n. 4 (Minn. 1990). Following this general guiding principle, Minnesota courts have routinely held that there is no private cause of action resulting from an individual's failure to adhere to similar reporting statutes. *Meyer v. Lindala*, 675 N.W.2d 635, 641 (Minn. App. 2004); *Kuelbes v. Williams*, 609 N.W.2d 10 (Minn. App. 2000).

Here, Minn. Stat. § 260E.08(a)-(b) explicitly provides only **criminal** liability for failing to make a maltreatment report required by Minn. Stat. § 260E.06 subd. 1. Moreover, the very same section contemplates **civil** liability for any person that knowingly or recklessly makes a false report. Minn. Stat. § 260E.08(d). Thus, Minn. Stat. § 260E.06 subd. 1 does not explicitly provide a civil cause of action for failing to make a report. The Court also declines to imply a cause of action because it would not be consistent to conclude that there is an implied civil cause of action when the statute explicitly contemplates civil liability for making a false report but remains silent on civil liability for not making a report at all.

Even though Minn. Stat. § 260E.06 subd. 1 does not explicitly or implicitly provide Kruse with a cause of action, Kruse asserts that she may maintain her claims pursuant to *Radke v. Cnty of Freeborn*, 694 N.W.2d 788 (Minn. 2005). However, *Radke* only stands for the proposition that "a cause of action can be maintained for negligence in the **investigation** of child abuse and neglect reports." 694 N.W.2d at 799 (emphasis added). As already established, the District Defendants are only required to report suspected maltreatment after knowing or having reason to know of maltreatment and do not have any responsibility or obligation to investigate such reports. Accordingly, *Radke* is irrelevant to whether a Kruse may maintain claims for negligence and wrongful death due to an alleged failure to file a maltreatment report.

17

It is clear that negligence and wrongful death actions cannot be maintained without a corresponding legal duty. Because Kruse's Complaint fails to allege a duty and, moreover, none of the provisions in Minn. Stat. § 260E support private causes of action against mandatory reporters who allegedly fail to uphold their duties, the Court will dismiss Counts 6 and 7 of Kruse's Complaint against the District Defendants.

## CONCLUSION

ALH's murder was a tragic event, and our community and the world are less well-off because of it. Despite the unmistakable tragedy, Kruse has not established that ALH's rights were clearly established such that educational professionals in the Individual District Defendants' shoes would understand that their conduct violated those rights. Nor has Kruse established that the District violated her or ALH's rights pursuant to an official policy or custom or usage. Similarly, Kruse has not alleged an applicable duty sufficient to support her negligence and wrongful death claims. Thus, while the Court is mindful of the unbearable pain Kruse, NJH, and everyone touched by ALH has suffered, Kruse's Complaint has failed to state plausible claims against the District Defendants and the Court will grant the District Defendants' Motion to Dismiss.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. District Defendants' Motion to Dismiss [Docket No. 26] is **GRANTED**:

    a. Count 1: Deprivation of Civil Rights: Care, Custody, and Control of Children is **DISMISSED WITHOUT PREJUDICE** as to the District and the unnamed District employees John Doe and Mary Rowe;

    b. Count 4: Deprivation of Civil Rights: Failure to Intervene in Deprivation of Civil Rights is **DISMISSED WITHOUT PREJUDICE** as to the District Defendants;

    c. Count 5: Deprivation of Right to Life and Rights to Protection/Support from Mother without Due Process is **DISMISSED WITHOUT PREJUDICE** as to the District Defendants;

    d. Counts 6: Negligence is **DISMISSED WITHOUT PREJUDICE** as to the District Defendants; and

    e. Count 7: Wrongful Death is **DISMISSED WITHOUT PREJUDICE** as to the District Defendants.

2. Plaintiffs' Motion to Amend [Docket No. 52] is **DENIED as MOOT.**

3. The District Defendants are dismissed from this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 22, 2022                   _____John M. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                       United States District Judge